UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-23452-CIV-CANNON/O'SULLIVAN

DANIEL VILLANUEVA,

     Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE and
THE FEDERAL BUREAU OF
INVESTIGATION,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (DE# 34, 10/23/2020) and the Defendants' Response to Plaintiff's Motion for Summary Judgment, and Cross Motion for Summary Judgment (DE# 41, 12/7/20). These matters were referred to Chief United States Magistrate Judge John J. O'Sullivan by the Honorable Aileen Cannon, United States District Judge, for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). (DE# 54, 4/15/21). Having carefully considered the cross-motions for summary judgment, the parties' respective responses and replies, and the evidence in the record, it is respectfully recommended that the Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (DE# 34, 10/23/2020) be GRANTED in part so as to require the defendants to produce responsive records or provide a more detailed affidavit or index that identifies and explains more specifically the bases for

1

documents withheld under Exemption 7(A) and the other exemptions and be GRANTED

to allow the plaintiff to pursue a claim for attorneys' fees and costs, if and when it is

appropriate.  Additionally, the undersigned respectfully recommends that the

Defendants' Response to Plaintiff's Motion for Summary Judgment, and Cross Motion

for Summary Judgment (DE# 41, 12/7/20) be GRANTED in part as to the defendants'

*Glomar* response[1] to preclude disclosure of responsive records of third party individuals

on privacy grounds[2] and DENIED without prejudice to renew after submitting a more

detailed declaration or *Vaughn* index for each of the claimed exemptions.

## INTRODUCTION

The parties filed cross-motions for summary judgment on the plaintiff's June

2018 Freedom of Information Act ("FOIA") request that seeks the release of the Federal

Bureau of Investigations' ("FBI") records created in connection with an investigation into

allegations of wire and securities fraud by various related entities and individuals[3]

---

[1]The phrase "*Glomar*  response" is derived from a case in which the requester sought information concerning the putatively covert operations of the ship, "HUGHES GLOMAR EXPLORER," and the CIA refused to confirm or deny its relationship with the Glomar vessel on the ground that disclosure would compromise national security or divulge intelligence sources and methods. Phillipi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), on remand, 6 Media L. Rep. 1673 (D.D.C June 9, 1980), aff'd,  655 F.2d 1325 (D.C. Cir. 1981).

[2]While the defendants' *Glomar* response is well taken as to the plaintiff's FOIA request seeking documents regarding six third party individuals, who were not charged with crimes, the defendants have not met their burden of identifying which of the approximately 20,500 pages or portions of pages of responsive records they seek to withhold on the bases of Exemptions 6 and 7(C).

[3]The subject FOIA request seeks records regarding six third party individuals who were not charged with crimes. Messrs. Baker and Gluk were the only two individuals who were charged and convicted of crimes in the underlying criminal case.

including ArthroCare Corporation's Chief Executive Officer, Michael Baker, and Chief Financial Officer, Michael Gluk. Both were tried by a jury and convicted.  The plaintiff is a licensed private investigator whose FOIA request seeks information that may help him assist attorneys with whom he is working to pursue civil claims arising out of the FBI's wire and securities fraud investigation.  The plaintiff seeks summary judgment on the grounds that the defendants have failed to timely comply with their obligations under the FOIA statute and that the defendants have not provided a detailed index or adequate factual bases to justify their initial categorical denial of the plaintiff's FOIA request based on Exemption 7(A) as well as six underlying FOIA exemptions.

In their cross-motion for summary judgment, the defendants seek summary judgment on the grounds that they have met their obligations under FOIA by conducting adequate searches for responsive documents and by providing to the plaintiff all non-exempt, responsive material that they located. The defendants have invoked FOIA Exemption 7(A) to categorically deny the disclosure of approximately 20,500 pages of responsive records in the FBI's investigative files on the ground that the responsive documents relate to an ongoing criminal prosecution and that release of such documents before Mr. Baker has exhausted his direct appeals or habeas petition could reasonably be expected to interfere with law enforcement proceedings in the event he secures a new trial. Additionally, the defendants invoke six underlying exemptions.  The defendants rely on the defendants' Second Declaration of Michael G. Seidel,[4]  Section

---

[4]In opposition to the plaintiff's motion for injunction, the defendants filed the first Declaration of Michael G. Seidel. First Seidel Decl. (DE# 17-1, 11/26/19). In support of their reply, the defendant's filed the Third Declaration of Michael G. Seidel. Third Seidel Decl. (DE# 50-1, 1/14/21).

Chief of the Record/Information Dissemination Section ("RIDS"), Information ("Second Seidel Decl."), which adds four additional exemptions. (DE# 41-1, 12/7/20). Additionally, the defendants offer the Court the opportunity to inspect the records *in camera.* The defendants did not file a *Vaughn* index regarding the 20,500 pages of withheld records.

In the present case, the Court must determine whether Exemption 7(A) applies to Mr. Baker's pending habeas petition and allows the defendants to categorically deny the plaintiff's FOIA request. If so, the Court must determine whether the FBI's Second Seidel Declaration satisfies the defendants burden of providing an adequate factual basis for this Court to make a *de novo* review and determine whether Exemption 7(A) and the six underlying exemptions apply to the defendants' categorical withholding of approximately 20,500 responsive documents.

## FACTUAL/PROCEDURAL BACKGROUND

On June 22, 2018, the plaintiff, Daniel Villanueva ("Mr. Villanueva" or "the plaintiff"), a licensed private investigator, working with attorneys investigating civil claims on behalf of victims injured as a result of the ArthroCare fraud scheme, filed his initial Freedom of Information Act ("FOIA") request with the U.S. Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (collectively referred to as "defendants"). June 22, 2018 FOIA Request (DE# 34-3, 10/23/20). The plaintiff's June 22, 2018 FOIA request sought records regarding the case files and investigator reports including FBI reports known as 302s, of interviews taken during the investigation relating to the ArthroCare fraud investigation.

Specifically, the June 22, 2018 FOIA request provided:

This record request relates to the Federal Investigation conducted by the

4

FBI into **a** Securities and Exchange case on Arthrocare Corporation a publicly traded corporation, its relationship with DiscoCare prior to and after Arthrocare purchased DiscoCare, Inc. The Miami Field Office of the FBI was the lead office for the Investigation into DiscoCare, Inc., a medical company associated with the Palm Beach Lakes Surgery Center ... The Miami Field office investigated DiscoCare, The Palm Beach Lakes Surgery Center and its employees and associates, not limited to but including the following persons[:] Dr. Jonathan Cutler, Mr. Michael Denker, Attorney Michael Stephen Steinger, Mr. Mark Izydore, Mr. Matthew Iscoe and Mrs. Jackie Marsh.  The Arthrocare Investigation was conducted by the FBI in the Western District of Texas, and several indictments were made as a result of the investigation under court case number 12-CR-00314. We request that all 302 reports and any documents in the FBI case [file] related to the above persons and businesses be produced to us.  These investigations took place sometime between 2005 and present. Additionally produce these records:
Any other cases investigated by the FBI where Mr. Mark Izydore, Dr. Jonathan Cutler and/or Attorney Michael Stephen Steinger were investigated.
Any and all 302 reports, Statements or Documents related to the following:
Arthrocare Corporation
DiscoCare, Inc.
Palm Beach Lakes Surgery Center
Dr. Jonathan Cutler
Michael Denker
Michael Stephen Steinger
Mark Izydore
Matthew Iscoe
Jackie Marsh

June 22, 2018 FOIA Request (DE# 34-3, 10/23/20).

On June 27 and June 28, 2018, the plaintiff received acknowledgment of receipt of the request from the FBI regarding three of his requested subjects namely, DiscoCare, Inc., Palm Beach Lakes Surgery Center, and the six third party individuals, Dr. Jonathan Cutler, Michael Denker, Michael Stephen Steinger, Mark Izydore, Matthew Iscoe, and Jackie Marsh. (DE# 34-4, 10/23/20). As to DiscoCare, Inc. and Palm Beach Lakes Surgery Center, the FBI indicated that it was unable to identify "any main file records responsive to [his] request" and that, therefore, his request regarding those

subjects was administratively closed. Id. As to the six third party individuals, the FBI asserted its *Glomar* response and refused to confirm or deny the existence of such records under FOIA Exemptions 6 and 7(C), 5 U. S.C. §§ 522(b)(6) and (b)(7)(C). (DE# 34-4, 10/23/20).  On July 2, 2018, the plaintiff received an acknowledgment of receipt of FOIA request from the FBI regarding Arthrocare Corporation. (DE# 34-5, 10/23/20).

On August 23, 2018, two months after the initial request, a Public Information Officer from the Record/Dissemination Sections ("RIDS") FBI Records Management Division sent a communication to the plaintiff in which the Officer indicated that the plaintiff's request was in the Initial Processing and that the assigned analyst was searching for, retrieving and reviewing potentially responsive records.  See Ex. D (DE# 34-6, 10/23/20). The August 23, 2018 communication explained the process pursuant to which requests are processed and explained that the searcher had not yet determined what track the search was in or how long the search was expected to take. The officer estimated that the FBI would complete the action in 1,335 days (more than three and half years) from the date the FBI opened the request. Id.

The plaintiff retained counsel to assist with his FOIA request. (DE# 34-1, 10/23/20). On September 26, 2018, the plaintiff's counsel submitted an electronic appeal through the FOIA online portal indicating that counsel had been retained to appeal the response regarding the time for compliance and the lack of information provided regarding the type and quantity of documents. (DE# 34-6, 10/23/20).  The plaintiff, through counsel, made numerous attempts to obtain information regarding the appeal. (DE# 34-1, 10/23/20).

As of October 18, 2018, the search for documents was not complete. Id., Ex.1  at

¶ 13, Ex. F (DE# 34-2, 34-9, 10/23/20).  On October 30, 2018, the plaintiff was advised that the FBI was working on his request.  Id., Ex.1  at ¶ 15, Ex. G.

On February 5, 2019, the plaintiff, through counsel, sent an email to the FBI  in an "effort[ ] to possibly expedite the search time for now regarding 302s on the six third party individuals identified in the June 2018 FOIA request as well as three additional individual doctors, namely, Drs. Lawrence Jeffrey Kugler, Jane Bistline and Heldo Gomez. Ex.1  at ¶ 17, Ex. H (DE# 34-10, 10/23/20). The February 5, 2019 email also sought 302s that mention six corporate entities[5] including Discocare, Inc. and Palm Beach Lakes Surgery Center. Id.  On February 26, 2019,  the plaintiff's counsel narrowed his search request to a limited list of specific 302s without handwritten notes "in the hopes that will expedite production" while expressing the plaintiff's continued desire to obtain all of the records requested in his original June 2018 FOIA request. Id. Ex.1  at ¶ 18, Ex. I.

Despite the narrowed requests, the plaintiff did not receive any further updates or responses regarding the timing until the plaintiff's counsel received an email on April 23, 2019, indicating that the request was "awaiting assignment" to a disclosure analyst and indicat**ing** that the estimated disclosure date for the narrowed request was approximately September 2020. Id. Ex.1  at ¶ 20, Ex. J.

On August 16, 2019, the plaintiff filed his Complaint for FOIA violations in which he seeks injunctive relief and an award of reasonable attorneys' fees and costs. On

---

[5]The four additional corporate entities are: 2047 Palm Beach Lakes Partners, LLC, Palm Beach Lakes Surgery Center, Palm Beach Practice Management Inc., and North Palm Neurosurgery P.L. Ex. H (DE# 34-10, 10/23/20); Ex. I (DE# 34-11, 10/23/20).

October 15, 2019, the defendants filed their Answer and Affirmative Defenses. (DE# 11, 10/15/19). On November 5, 2019, the United States Department of Justice filed its Notice of Striking Affirmative Defenses. (DE# 12/5/19).

On October 29, 2019, the plaintiff, through counsel, was informed, for the first time, that "the FBI [would] not be able to quickly process and/or being producing" any responsive documents in its files due to the lack of finality of Michael Baker's conviction, and one of the criminal defendants in Texas. (DE# 34-1, 10/23/20) Ex. 1 at ¶ 33 and Ex. R; see Defendants' Response to Plaintiff's "Statement of Undisputed Material Facts" at ¶ 39 (DE# 42, 12/7/20).

On November 26, 2019, the defendants responded to the Plaintiff's Motion for Preliminary Injunction and disclosed for the first time that they identified approximately 21,000 pages of responsive documents that they were withholding based on FOIA's law enforcement exemption (Exemption 7(A)) and privacy exemptions (Exemptions 6 and 7(C)). (DE# 17, 11/26/19). The defendants filed the First Seidel Declaration in support of their response to the Plaintiff's Motion for Preliminary Injunction.  See First Seidel Decl. (DE# 17-1, 11/26/19).  In the First Seidel Declaration, the defendants invoked FOIA Exemption 7(A) to categorically protect potentially responsive documents located by the FBI related to an ongoing criminal prosecution and the release of the documents could reasonably be expected to interfere with law enforcement proceedings. First Seidel Decl. at ¶ 6. At the time of the First Seidel Declaration, the defendants relied on a pending appeal by Mr. Baker in which he appealed his criminal conviction and in which a petition for writ of certiorari was pending in the United States Supreme Court.  Id. Eventually, the Supreme Court denied Mr. Baker's petition for certiorari.

8

In the First Seidel Declaration, the FBI proposed a time period of ten months within which to allow for the FBI to complete the review of responsive documents and identify all applicable exemptions and an additional ninety days "to prepare and file the Vaughn declaration[6] detailing the FBI's FOIA Exemption 7(A) claim as well as explaining each underlying applicable FOIA Exemptions." First Seidel Decl. at ¶ 18.

The FBI completed its processing of the plaintiff's FOIA request in September, 2020, and provided the plaintiff with what the FBI deemed the non-exempt portion of records responsive to his FOIA request.  (DE# 42, 12/7/21). The FBI provided a *Vaughn* index for approximately 500 pages of documents  (Bates- numbered FBI 19-cv23451-1 through FBI 19cv23452-497) that were produced by the FBI to the plaintiff on September 30, 2020 in full, produced in part or withheld as duplicates. The *Vaughn* index is Exhibit S in the Appendix of the defendants' response and cross-motion for summary judgment.  See Appendix, Ex. S pp. 81-100 (DE# 41-2, 12/7/21). The *Vaughn* index does not address the approximately 20,500 pages of documents that have been withheld under Exemption 7(A) and the underlying additional exemptions.  (DE# 34-1, 10/23/20) Ex. 1 at ¶ 35 and Ex. S.

On October 23, 2020, the plaintiff filed the Plaintiff's Motion for Summary

---

[6]The plaintiff argues that "[a]lthough, according to the Second Declaration, Defendants did complete the processing of Plaintiff's request, they did not provide a *Vaughn* declaration detailing [the] FBI's FOIA Exemption 7(A) nor did they explain the application of the other newly asserted Exemptions to the located records.  It appears they did not review and assign a functional category to each of the documents or, at least, they have not disclosed those assignments in the Second [Seidel] Declaration." Plaintiff's Reply at 5 (DE# 47, 12/31/20).

Judgment and Supporting Memorandum of Law (DE# 34, 10/23/2020).  The plaintiff

seeks reasonable attorney's fees to recover the fees and costs he has incurred in

attempting to compel the defendants to comply with their obligations under FOIA.

   On December 7, 2020, the defendants filed the Defendants' Response to

Plaintiff's Motion for Summary Judgment, and Cross Motion for Summary Judgment

(DE# 41, 12/7/20) and the defendants filed the Defendants' Response to Plaintiff's

"Statement of Undisputed Material Facts" (DE# 42, 12/7/20). The defendants maintain

that the undisputed material facts regarding the defendants' processing of the plaintiff's

FOIA request are set forth in the Second Declaration of Michael G. Seidel. <u>See</u> Second

Seidel Decl. (DE# 41-1, 12/7/20). The defendants rely on the Second Seidel Declaration

to justify their categorical withholding of approximately 20,500 pages of responsive

documents under FOIA Exemptions 7(A) and specifically paragraphs 71 through 134 of

the Second Seidel Declaration to justify withholding under the six other exemptions,

namely FOIA Exemptions 3, 5, 6, 7(C), 7(D) and 7(E).

   On December 31, 2020, the plaintiff filed his reply. On October 26, 2020, the

plaintiff filed his Notice of Filing Exhibits. (DE# 35, 10/26/20).

   On January 14, 2021, the defendants filed the Defendants' Reply to Plaintiff's

Response to Defendants' Cross Motion for Summary Judgment. (DE# 50, 1/14/21). The

defendants filed the Third Declaration of Michael G. Seidel (DE# 50-1, 1/14/21).

   On March 30, 2021, the defendants filed the Defendants' Notice Regarding Law

Enforcement Proceedings Underlying Plaintiff's FOIA Request (DE# 51, 3/30/21) and

attached a copy of the criminal defendant Michael Baker's Motion to Vacate, Set Aside

or Correct a Sentence in the underlying criminal action, *United States v. Peter Baker, et*

*al.*, Case No. 13-CR-346-LY (W.D. Tex.). (DE# 51-1, 3/30/21).

On April 15, 2021, the cross-motions for summary judgment were referred to the undersigned for a Report and Recommendation. (DE# 54, 4/15/21).

The cross-motions for summary judgment are ripe for disposition.

## ANALYSIS

I.    Summary Judgment Standard under the FOIA Framework

Rule 56(a) of the Federal Rules of Civil Procedure prescribes in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proof on a motion for summary judgment and must "demonstrate the absence of a genuine issue of material fact." Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). "A factual dispute between the parties will not defeat summary judgment unless it is both genuine and material." Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1244 (11th Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). "A factual dispute is 'material' if **it** would affect the outcome of the suit under the governing law,' and 'genuine' if a reasonable trier of fact could return judgment of the non-moving party." Id. at 1243.

When the moving party satisfies its burden, the non-moving party "may not rest upon the mere allegation or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Id. (citing Anderson, 477 U.S. at  247-248); see Centennial Bank v. The Noah Group, LLC, 755 F. Supp. 2d 1256, 1259 (S.D. Fla.

11

2010). Cross-motions for summary judgment require the Court to analyze the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249; see Centennial Bank, 755 F. Supp. 2d at 1259.

"The purpose of FOIA[7] 'is to encourage public disclosure of information so citizens may understand what their government is doing.'" Miccosukee, 516 F.3d at 1244 (quoting Office of the Capital Collateral Counsel v. U.S. Dep't of Justice, 331 F.3d 799, 802 (11th Cir. 2003)). Under FOIA, an agency must release all records responsive to a properly submitted FOIA request unless one or more of FOIA's nine exemptions protect such records from disclosure. 5 U.S.C. § 552(b); U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150-51 (1989). FOIA's disclosure provisions are construed broadly; FOIA's exemptions are construed narrowly. Tax Analysts, 492 U.S. at 151 (citing FBI v. Abramson, 456 U.S. 615, 630 (1982) (other citation omitted)); see, Ely v. FBI, 781 F.2d 1487, 1489 (11th Cir. 1986).

"Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."  Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993); St. Andrews Park, Inc. v U.S. Dep't of Army Corps of Engineers, 299 F. Supp. 2d 1264, 1267 (S.D. Fla. 2003). To be entitled to summary judgment "in a FOIA case, the agency must demonstrate that no material facts are in dispute and that it

---

[7]"FOIA was *not* intended to function as a private discovery tool...." N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978) (citation and footnote omitted) (emphasis in original).

conducted a search of records in its custody **or** control, <u>Kissinger v. Reporters Committee for Freedom of the Press</u>, 445 U.S. 136, 150-51 (1980), that was reasonably calculated to uncover all relevant information, <u>Weisberg v. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984), which either has been released to the requestor or is exempt from disclosure, <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001)." <u>King v. U.S. Dep't of Justice</u>, Civil Action No. 08-1555(HHK), 2009 WL 2951124, at *3 (D.C. Dist. Sept. 9, 2009).

In FOIA cases, the agency bears the ultimate burden of proof because it is the only party able to explain the withholding of records. <u>Tax Analysts</u>, 492 U.S. at 142 n.3 (1989); <u>Ely</u>, 781 F.2d at 1489-90 (The burden is 'squarely on the government to prove that the information in question is covered by one of the exemptions.'"); <u>Miccosukee Tribe</u>, 516 F.3d at 1258.  Under FOIA, the agency is required to "release 'any segregable portion' after deletion of the nondisclosable portions" of exempt records. <u>Oglesby v. U.S. Dep't of Army</u>, 79 F3d. 1172, 1176 (D.C. Cir. 1996)(quoting 5 U.S.C. § 552(b)); <u>see</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820, 825 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1974) (D.C. Cir. 1973) ("It is quite possible that part of a document should be kept secret while part should be disclosed.").

In the Eleventh Circuit, "an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* index, *in camera* review, or through a combination of these methods." <u>Id</u>. (citing <u>Miscavige</u>, 2 F.3d at 368) (emphasis in original). "An adequate factual basis can be established *in this Circuit* by affidavits alone, in lieu of a *Vaughn* index or an *in camera* review." <u>Id</u>.

(citing Miscavige, 2 F.3d at 368) (emphasis in original). In Miccosukee Tribe,[8] the Eleventh Circuit explained that "this Circuit has not established a set formula or pattern for what will suffice as a *Vaughn* Index.  The index usually consists of a listing of each withheld document, or portion thereof, indicating the specific FOIA exemption applicable to the specific agency justification for the non-disclosure." Id. at 1260 (citing Vaughn, 484 F.2d at 827) .  In Miscavige, the Eleventh Circuit held that "in certain cases, affidavits can be sufficient for summary judgment purposes in [a] FOIA case if they provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, *in camera* review, or oral testimony." Miscavige, 2 F.3d at 368 (citing Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989)); Vaughn v. United States, 936 F.2d 862, 867 (6th Cir. 1991)). "*Vaughn* Indexes are most useful in cases involving thousands of pages of documents." Id. In Miscavige, the Eleventh Circuit suggested that *in camera* inspection,[9] which is discretionary, might be the preferred method when few documents are involved. Id. Before exercising its discretion to conduct an *in camera* review of records, a district court "'should attempt to create as complete a public record as is possible.'" Ely, 781 F.2d at 1493 (quoting Phillippi v.  CIA,  546 F.2d 1009, 1013 (D.D.C. 1976)).

---

[8]In Miccosukee Tribe, all three methods of establishing the factual basis, affidavits, a *Vaughn* index, and an *in camera* inspection, were considered by the district court.  The Eleventh Circuit found that even before the district court conducted an *in camera* inspection that the affidavits and the *Vaughn* index provided an adequate factual basis for the district court to determine whether the claimed exemptions applied.

[9]*"[I]n camera* review 'is to be utilized in only the rare case such as ... [when] the disputed documents are relatively brief, few in number and where there are few claimed exemptions.'"  Ely, 781 F.2d at 1493 (quoting Currie v. I.R.S., 704 F.2d 523,531 (11th Cir. 1983)).

"Summary judgment for the federal agency is proper '[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith.'" Florida Immigrant Advocacy Ctr. v. Nat'l Sec. Agency, 380 F. Supp. 2d 1332, 1338 (S.D. Fla. 2005) (quoting Hayden v. N.S.A., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980)).  The Eleventh Circuit explained that "Congress made clear that the court, not the agency, is to be the ultimate arbiter of privilege" under the FOIA statute.  Ely, 781 F.2d at 1490.  "'[T]he court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action[....]'" Id. (quoting 5 U.S.C. § 552(a)(4)(B)(vii)).   On review of a district court's decision that the FOIA exemptions apply, the Eleventh Circuit will determine whether the district court "had an [adequate] factual basis and was not clearly erroneous in finding that the documents withheld were exempt under the applicable provisions of the FOIA." Miscavige, 2 F.3d at 368.

II.     Cross-Motions for Summary Judgment

To date, the FBI and the DOJ have partially or fully produced a total of approximately 500 pages of approximately 21,000 pages of responsive records. The FBI provided a *Vaughn* index only for the 500 pages of produced documents. The FBI and the DOJ have asserted a *Glomar* response, which neither admits nor denies whether the defendants have investigated any of the six third party individuals and whether any responsive documents exist for those individuals. The plaintiff does not

15

address the defendants' *Glomar* response in his motion or his reply.

<u>Plaintiff's Motion for Summary Judgment</u>

The plaintiff seeks summary judgment against the FBI and the DOJ for failing to comply with the requirements of the FOIA statute, Section 552(a)(6) of Title 5 of the United States Code. Plaintiff's Motion at 1, 3 (DE# 34, 10/23/20); 5 U.S.C. § 552(a)(6). Specifically, the plaintiff argues that the defendants have failed to timely[10] provide documents or information to the plaintiff and have failed to provide any reasonable explanation regarding why approximately 20,500 pages of responsive documents were not produced.  <u>Id</u>. at 3.  In his motion, the plaintiff explains that in response to the plaintiff's FOIA request, the defendants originally asserted three FOIA exemptions[11] namely: 1) Exemption 6 - protecting privacy interests (5 U.S.C. § 552(b)(6)); 2) Exemption 7(A) - protecting law enforcement investigations (5 U.S.C. § 552(b)(7)(a)); and 3) Exemption 7(C) - protecting privacy of law enforcement officials (5 U.S.C. § 552(b)(7)(C)). <u>Id</u>. at 20.  The defendants based their three exemptions solely on the ground that Mr. Baker had not exhausted his direct appeals of his second conviction and may file a habeas petition to challenge his conviction. <u>Id</u>.  Currently, Mr. Baker's direct appeals of his second conviction are now exhausted, but his habeas petition

---

[10]The plaintiff's timeliness issue is rendered moot because the defendants have finally completed the processing and review of records responsive to the plaintiff's FOIA request.  Additionally, the defendants have produced approximately 500 pages of responsive documents and have invoked Exemption 7(A) to categorically withhold approximately 20,500 pages of remaining responsive records and have invoked six underlying exemptions.

[11]In the defendants' cross-motion, the defendants added the following four exemptions: Exemption 3, 5, 7(D) and 7(E).

remains pending.

The plaintiff argues that the Second Seidel Declaration lacks the requisite specificity and explanations required by FOIA for the plaintiff and the Court to have sufficient facts to determine whether the exemptions apply to the withheld responsive documents. The plaintiff requests an order compelling the defendants to produce documents or to provide a detailed index specifying those documents withheld pursuant to the cited exemptions and to explain the basis for the application of the cited exemption as well as indicate whether the withheld documents or information were previously disclosed in a criminal or other trial or litigation.  The plaintiff maintains that he is entitled to summary judgment because the FBI and DOJ failed to satisfy their burden of justifying the bases for the exemptions invoked under FOIA. Additionally, the plaintiff seeks an award of reasonable attorneys' fees and costs. See Plaintiff's Motion at 2 (DE# 34, 10/23/20); Plaintiff's Reply at 1-2 (DE# 47, 12/31/20).

<u>Defendants' Cross-Motion for Summary Judgment</u>

In their cross-motion for summary judgment, the defendants seek summary judgment in their favor on their *Glomar* response to the FOIA request regarding the six third party individuals, and their categorical denial of the plaintiff's FOIA request based on Exemption 7(A) as well as the six other FOIA exemptions on the grounds set forth in the Second Seidel Declaration. Defendants' Cross-Motion at 4 (DE# 41, 12/7/21).

In addition to the categorical denial under Exemption 7(A), the defendants assert six[12] underlying FOIA exemptions: i) Exemption 3 (information protected by statute); ii)

---

[12]Exemptions 3, 5, 7(D) and 7(E) are new and were raised for the first time in the defendants' response and cross-motion. The defendants previously invoked Exemptions

Exemption 5 (privileged information: attorney client privilege, work product doctrine and deliberative process privilege); iii) Exemption 6 (clearly unwarranted invasion of privacy); iv) Exemption 7(C) (unwarranted invasion of privacy); v) Exemption 7(D) (confidential source information); and vi) Exemption 7(E) (investigative techniques and procedures).  See 5 U.S.C. §§(b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E), respectively; Second Seidel Decl. at ¶¶ 70, 71-134.

     A.    <u>Habeas Proceeding as the Basis for Invoking Exemption 7(A)</u>

Several months after the cross-motions were ripe, on March 29, 2021, Mr. Baker filed his habeas petition.  <u>See</u> Defendants' Notice regarding Law Enforcement Proceedings Underlying Plaintiff's FOIA Request (DE# 51, 3/30/21); and Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Motion under 28 U.S.C. §2255) ("habeas petition") (DE# 51-1, 3/30/21). The analysis of a "prospective" habeas proceeding is no longer relevant because Mr. Baker filed his habeas petition and it remains pending in Texas.[13]  The parties dispute whether Mr. Baker's recently filed habeas petition allows the defendants to categorically withhold records in the FBI's investigative files under Exemption 7(A).

---

6 and 7(C) to withhold records to protect against the invasion of privacy of individuals identified within the FBI's investigative files.

[13]At the time of filing his motion and reply, the plaintiff  argued that the possibility of Mr. Baker filing a habeas petition did not allow the defendants to rely on a categorical denial of disclosure based on Exemption 7(A).  The plaintiff distinguished <u>Johnson</u> and <u>King</u> because both cases involved pending habeas petitions and the government had filed a detailed index or the court required a detailed index identifying the documents withheld under Exemption 7(A). Plaintiff's Reply at 5 (DE# 47, 12/31/20); <u>see</u> <u>Johnson v. F.B.I.</u>, 118 F. Supp. 3d 784 (E.D. Pa. 2015) and <u>King v. U.S. Dep't of Justice</u>, No. 08-1555(HHK), 2009 WL 2951124 (D.D.C. Sept. 9, 2009).

The plaintiff argues that it is unlikely that Mr. Baker will succeed in his habeas proceeding and be granted a new trial, where, as here, he has been tried and convicted twice, the Supreme Court denied his petition for writ of certiorari, and Mr. Baker will necessarily have to overcome the procedural default rule. The procedural default rule bars a criminal defendant from presenting a claim in a habeas proceeding when he failed to raise the issue in a direct appeal that challenged his conviction or sentence. McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011). Only two exceptions to the procedural default rule apply: 1) for cause and prejudice, or 2) for a miscarriage of justice, or actual innocence.  Id. (citing Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004)).  The plaintiff contends that "[d]emonstrating actual prejudice or innocence after two previous convictions is a very high obstacle. The [d]efendants do not present any basis upon which to believe Mr. Baker is likely to overcome the procedural default rule." Plaintiff's Reply at 8 (DE# 47).  The plaintiff argues further that the defendants have not met their burden of establishing that Mr. Baker's habeas proceeding justifies a blanket application of Exemption 7(A) to withhold thousands of pages of responsive documents in this case.

The defendants argue that a habeas petition qualifies as a law enforcement proceeding subject to FOIA Exemption 7(A) because it may result in a new trial. Cross-motion at 11 (DE# 41, 12/7/20). The defendants rely on Johnson v. FBI, 118 F. Supp.8 3d 784 (E.D. Pa. 2015) and King v. U.S. Dep't of Justice, No. 08-1555(HHK), 2009 WL 2951124 (D.D.C. Sept. 9, 2009); 5.U.S.C. § 552(b)(7)(A). "A motion under § 2255 is a collateral attack on [the] conviction and sentence; as such, proceedings on the motion necessarily involve matters directly related to King's criminal prosecution and conviction.

King's post-conviction motion is still pending and is therefore prospective, as is required for application of the [7(A)] exemption." King, 2009 WL 2951124, at *6 (citing North v. Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989) (other citation omitted)).  The King court explained that "[t]his Court has previously applied FOIA exemption [(7)(A)] to post-conviction motions to vacate a sentence." Id. (citing Slip op., *Maydak v. Dep't of Justice*, Civil Action No. 97-1830 (EGS) (D.D.C. Sept. 1, 1998); and Maydak v. Dep't of Justice, 218 F.3d 760 (D.C. Cir. 2000) (referring to the district court decision but not deciding the issue because the defendant abandoned the issue as moot because the post-conviction appeals were resolved)).

A habeas petition makes it "reasonably foreseeable that an enforcement proceeding (i.e. a new trial) will take place, leading to the expectation that Exemption 7(A) may apply to protect materials whose release could reasonably be expected to interfere with that new trial." Johnson, 118 F. Supp. 3d at 792; see also King, id. ("[I]t is easy to imagine information of such a nature that its disclosure 'could reasonably be expected to interfere with law enforcement proceedings.'").

The undersigned finds that  Mr. Baker's pending habeas petition and the possibility, not probability, of a new trial[14] allows the government to assert Exemption 7(A) to prevent disclosure of records that could reasonably be expected to interfere with a new trial. However, the ultimate burden of proof[15] is on the government to show the

---

[14]"[R]eliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close." Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice, 746 F.3d 1082, 1097 (D.C. Cir. 2014) ("CREW").

[15]Tax Analysts, 492 U.S. at 142 n.3 (1989); Ely, 781 F.2d at 1489-90; and Miccosukee Tribe, 516 F.3d at 1258.

Court how disclosure of each category of documents could reasonably be expected to interfere with a new trial in the event Mr. Baker prevails in his habeas proceeding.

      B.    <u>Public Domain Doctrine:  Plaintiff Asserts That Defendants' *Johnson* Case</u>
           <u>Support His Motion for Summary Judgment,</u>
           <u>Not the Defendants' Motion for Summary Judgment</u>

In his reply, the plaintiff argues that the defendant's <u>Johnson</u> case actually supports his motion, not the defendants' cross-motion.  In <u>Johnson</u>, the district court determined that the public domain doctrine applied to materials made public in the criminal defendant's prior trial and denied the defendant's motion for summary judgment. "'Under [the] public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'" <u>Johnson</u>, 118 F. Supp. 3d at 795 (quoting <u>Cottone v Reno</u>, 193 F.3d 550, 554 (D.C. Cir. 1999)). "'[T]he general rule [is] that a trial is a public event, and what transpires in the court room is public property.'" <u>Id</u>. (quoting <u>Davis v. U.S. Dep't of Justice</u>, 968 F.2d 1276, 1279 (D.C. Cir. 1992)).

    Before the Court can find that the exemption has been waived under the public domain doctrine, "'a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" <u>Johnson</u>, 118 F. Supp. 3d at 795 (quoting <u>Davis</u>, 968 F.2d at 1279 (D.C. Cir. 1992)); <u>cf.</u> <u>King</u>, 2009 WL 2951124 at *5  (finding King's contention that exemption 7(D) did not apply because "all the confidential sources were identified when they got on the witness stand at King's federal jury trial" did not "'point to specific information in the public domain that appears to duplicate that being withheld'") (quoting <u>Cottone v. Reno</u>, 193 F.3d 550, 554 (D.C. Cir. 1999) (other quotations omitted)); and <u>cf.</u>

21

Broward Bulldog, 939 F.3d at 1185 (emphasis in original) (The Eleventh Circuit held that the district court erred in "rul[ing] that the public-domain doctrine applies to information that is in the public domain based only on media speculation and [by] not requir[ing] Broward Bulldog to prove the *same* information in each redaction was already in the public domain....").

In Johnson, the court found that the plaintiff "met her initial burden by pointing to the evidence that was introduced at [the criminal defendant's] trial." Johnson, 118 F. Supp. 3d at 795. The Johnson court explained that "[t]he evidence introduced at [the criminal defendant's] trial constitutes a specific set of materials, likely present in the investigative file at issue, which was placed in the public record." Id. The Johnson court found that the public domain doctrine applied and denied the defendant's motion for summary judgment. The Johnson court required the FBI to provide a detailed description of material in its investigative file, including material that was made part of the public record at trial or produced to the criminal defendant in discovery, to assist the Court in determining whether disclosure of the withheld material would risk interfering with the criminal defendant's possible second trial.

In the Second Seidel Declaration, the FBI acknowledges that "many pieces of information have been made public through the criminal proceedings," yet the FBI claims its records are protected because they are not "identical" to the publicly disclosed information "and any such information is intertwined with non-public information." Second Seidel Decl. at ¶ 67 (DE# 41-1, 12/7/20).  The potential harms that the FBI articulates as grounds for withholding responsive records do not address why such harms apply given that "many pieces of information have been made public" during the

22

trials of Mr. Baker and Mr. Gluk. Id.

In their reply, the defendants attempt to distinguish Johnson on the ground that the FOIA requester was the criminal defendant in the underlying trial. In fact, Ms. Johnson was an investigator for counsel representing the criminal defendant in his pending habeas proceeding. Johnson, 118 F. Supp. 3d at 788-789. The defendants argue that in the present case "the plaintiff has not previously been granted access to the information at issue, and the mere fact that such information may have been provided to the defendant in the criminal case at issue does not mean that the information has been placed in the pubic domain." Defendants' Reply at 7 (DE# 50, 1/14/21) (citing Campbell v. U.S. Dep't of Justice, 133 F. Supp. 3d 58, 66-67 (D.C. Dist. 2015)). This is a distinction without a difference. In the present case, the plaintiff is not seeking records that were previously produced as discovery to the defendants in the underlying criminal cases.[16]  Instead, the plaintiff argues that the defendants should be required to provide a detailed index that reveals which records were previously made public and explain why the articulated harms exist if such information is already in the public domain.[17]

_____

[16]The defendants' reliance on Campbell v. U.S. Dep't of Justice, 133 F. Supp. 3d 58, 66-67 (D.C. Dist. 2015) is misplaced. In Campbell, the DOJ provided a *Vaughn* index to the plaintiff and had not invoked Exemption 7(A). The Campbell case is factually and legally distinguishable.  Unlike Campbell, here, the defendants invoked Exemption 7(A), the defendants did not provide a *Vaughn* index, and the plaintiff is not seeking records that were produced to Mr. Baker as discovery in his underlying criminal trials.

[17]The plaintiff includes the court docket, in Mr. Baker's underlying federal criminal case in Texas, as an exhibit in support of his motion for summary judgment. See Plaintiff's Notice of Filing Exhibits, Ex. 4 "Criminal Docket" (DE# 35-3, 10/26/20). The criminal docket includes the parties' respective witness lists and exhibit lists, transcripts

In <u>Johnson</u>, the court explained that

[i]n light of the fact that the United States already presented its case once before, and some of the materials in the investigative file (including the identities of witnesses and the investigative tactics used by government agents) are claimed to be matters of public record, it cannot be that their release could reasonably be expected to result in any of the harms articulated by the FBI.

<u>Johnson</u>, 118 F. Supp. 3d at 795.

Although transcripts of the trial are listed on the criminal docket sheet as well as the government's and the criminal defendants' respective exhibit and witness lists of the underlying criminal case in Texas, the undersigned finds that the plaintiff has not satisfied his burden of pointing to specific information in the public domain that appears to duplicate the records being withheld by the defendants in this case. <u>See</u> <u>Broward Bulldog</u>, 939 F.3d 1164; <u>Cottone</u>, 193 F.3d at 554.  Unlike the present case, in <u>Broward Bulldog</u>, which did not involve Exemption 7(A), the defendant provided multiple sealed <i>Vaughn</i> indexes and affidavits and the district court conducted an <i>in camera</i> review of the withheld documents.[18]

The undersigned finds that the public domain doctrine does not apply because the plaintiff has not met his burden of pointing to specific, identical material that was made public at the prior trials. <u>See</u> <u>Broward Bulldog</u>, 939 F.3d at 1185; <u>King</u>, 2009 WL 2951124 at *5. Because the public domain doctrine does not apply, the withheld

---

of Michael Baker and Michael Gluk's jury trial (CR-DE# 345-364, 10/23/14),  post-trial motions, sentencing memoranda, witness and exhibits lists for the sentencing, Mr. Baker's Notice of Appeal (CR-DE# 388), and other documents**.**

[18]Notably, in <u>Broward Bulldog</u> the Eleventh Circuit explained that it had "not adopted the public-domain doctrine regarding Exemption 7(C)" (unwarranted invasion of privacy).  <u>Broward Bulldog</u>, 939 F.3d at 1185.

documents do not lose their "cloak of protection" from the FOIA exemptions simply because witnesses and information may have been made part of the public record during the prior trials of Messrs. Baker and Gluk.

However, the defendants bear the ultimate burden of providing an adequate factual basis for withholding the documents they claim to be exempt.  Unlike Broward Bulldog and King, in the present case, the defendants did not provide a detailed *Vaughn* Index for the thousands of withheld pages of responsive records. The Second Seidel Declaration is deficient and fails to provide the facts necessary for the undersigned to determine *de novo* that Exemption 7(A) or the other underlying exemptions apply to any, some or all of the materials in the investigative file that are being withheld on the ground that their disclosure may interfere with Mr. Baker's possible third trial if he succeeds in his habeas proceeding.

      C.    Defendants Have Not Met Their Burden of Proving FOIA Exemptions

The defendants "bear[ ] the burden of justifying [their] denial with a sufficiently detailed description of what  [they are] refusing to produce and why so that the requester and the court can have a fair idea what the [defendants are] refusing to produce and why." Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035, 1042 (9th Cir. 1999); Miccosukee Tribe, 516 F.3d at 1258.  The parties disagree as to whether the defendants satisfied their burden.

When the plaintiff filed his motion for summary judgment, the defendants had not yet provided any details of the grounds for the categorical withholding of responsive documents other than Exemption 7(A) (law enforcement proceeding) and Exemptions 6 and 7(C) (privacy exemptions). The plaintiff requests the Court to require the

25

defendants to provide an index or more detailed affidavit.[19] In his reply, the plaintiff

argues that the sixty-eight page Second Seidel Declaration does not comply with FOIA

because

> [t]he Second Declaration does not indicate how many documents are
> withheld pursuant to each of the various exemptions asserted but rather
> makes a blanket assertion of all of the exemptions to all of the [withheld]
> responsive documents.  And the Second Declaration either fails or only
> vaguely explains why the various asserted exemptions apply to the
> specific withheld documents.

Plaintiff's Reply at 3 (DE# 47, 12/31/20).

The defendants contend that the Second Seidel Declaration (DE# 41-1) satisfies

FOIA. See Defendants' Cross-Motion at 4 (DE# 41, 12/7/20).  The defendants maintain

that the Second Seidel Declaration "explains that each responsive document that was

withheld falls into one or more of the following functional categories;

evidentiary/investigative materials; administrative materials; and public source

materials." Id. (citing Second Seidel Decl. at ¶ 69 (DE# 41-1, 12/7/21)). By claiming that

the responsive withheld documents "fall[ ] into one or more" of the three functional

categories without identifying which documents fall into each category, the defendants

fail to provide the Court with the factual basis to determine which exemptions apply to

which category or categories of documents.  In effect, the defendants have provided a

blanket exemption for the FBI's entire investigative file **except** the approximately 500

---

[19]The plaintiff argues that the Second Seidel Declaration is inconsistent with the
First Seidel Declaration because the defendants did not provide a *Vaughn* declaration
detailing the FBI's FOIA Exemption 7(A) and did not explain the application of the other
newly asserted exemptions to the located records.  Plaintiff's Reply at 5 (DE# 47,
12/31/21). Additionally, the Second Seidel Declaration does not disclose the assignment
of responsive records to a functional category.  Id.

documents that were partially or fully produced to the plaintiff under the public source category.

As more fully explained below, the undersigned finds that the defendants have not satisfied their burden with the Second Seidel Declaration because they failed to assign documents to the three categories and they failed to provide adequate explanations to provide the factual bases for the undersigned to determine whether Exemption 7(A) applies to all of the thousands of pages of withheld records, particularly, where, as here, the FBI acknowledges that "many pieces of information have been made public through the criminal proceedings." Second Seidel Decl. at ¶ 67 (DE# 41-1, 12/7/20). Additionally, unlike Exemption 7(A) which authorizes a categorical denial, the other six exemptions that the defendants invoked require the defendants to identify each document and the reason(s) for withholding each document under a particular exemption.

    1.    Defendants' Categorical Denial under FOIA Exemption (7)(A) -
          Investigative Files/Law Enforcement Records That Could
          Reasonably Interfere with Enforcement Proceedings

Exemption 7(A) allows the defendants to assert a categorical denial rather than a document-by-document denial as required for other FOIA exemptions. Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("CREW").  Under FOIA Exemption 7(A), an agency may withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5.U.S.C. § 552(b)(7)(A). Before invoking FOIA Exemption 7, an agency must demonstrate that the records or

information at issue were compiled for law enforcement purposes.[20]  Application of

Exemption 7(A) requires the existence of law enforcement records, a pending or

prospective law enforcement proceeding, and a determination that release of the

information could reasonably be expected to interfere with the enforcement proceeding.

"Exemption 7(A) is temporal in nature." CREW, 746 F.3d at 1098  (citing NLRB v.

Robbins Tire & Rubber Co., 437 U.S. 214, 230-232 (1978) ("[R]eliance on Exemption

7(A) may become outdated when the [law enforcement] proceeding at issue comes to a

close." Id. at 1097.

      Where, as here, the agency invokes Exemption 7(A), "an agency may

categorically withhold responsive documents as long as it: (1) defines its categories

functionally; (2) conducts a document-by-document review and assigns documents to

the appropriate category; and (3) explains how the release of each category would

interfere with enforcement proceedings." CREW, 746 F.3d at 1098 (citing Bevis v. Dep't

of State, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986)); see Robbins Tire, 437 U.S. at 236

(1978)(concluding that "Congress did not intend to prevent the federal courts from

determining that, with respect to particular kinds of enforcement proceedings, disclosure

of particular kinds of investigatory records while a case is pending would generally

---

[20]"Pursuant to 28 U.S.C. §§ 533, 534 and Executive Order 12,333 (as
implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-
DOM) and 28 C.F.R. §§ 0.85, the FBI is the primary investigative agency of the federal
government with authority and responsibility to investigate all violations of federal law
not exclusively assigned to another agency, to conduct investigations and activities to
protect the United States people from terrorism and threats to national security, and
further the foreign intelligence objectives of the United States." Second Seidel Declar. at
¶ 48.

'interfere with enforcement proceedings'");<u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 789 F.2d 64, 66 (D.C. Cir. 1986).

In <u>Robbins Tire</u>, the Supreme Court addressed the question of "whether the [NLRB] ... met its burden of demonstrating that disclosure of the potential witnesses' statements at this time 'would interfere with enforcement proceedings'" and concluded that it did. <u>Id</u>. In <u>Robbins Tire</u>, the timing of disclosure was at issue. The Supreme Court explained that "[t]he most obvious risk of 'interference' with [NLRB] enforcement proceedings [by *premature* release of witness statements] is that employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony or not testify at all." <u>Id</u>. at 239 (emphasis added).

When an agency relies on generic determinations, "its definitions of relevant categories of documents must be sufficiently distinct to allow a court to grasp 'how each ... category of documents, if disclosed, would interfere with the investigation.'" <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 789 F.2d 64, 67 (D.C. Cir. 1986) (quoting <u>Campbell v. Dep't of Health and Human Svcs.</u>, 682, F.2d 256, 265 (D.C. Cir. 1982)).

In <u>Crooker</u>, the court explained that

> [t]he hallmark of an acceptable <u>Robbins [Tire]</u> category is thus that it is *functional*; it allows the court to trace a rational link between the nature of the document and the alleged likely interference.  If the government is unable to make such a showing without revealing information that could interfere with enforcement proceedings, the district court may accept *in camera* submissions; but that course should be taken, we have cautioned, only when it is unavoidable.

<u>Id</u>. (citations omitted) (emphasis in original).

After consulting Caitlin Cunningham, the Assistant Chief of the Fraud Section,

Criminal Division, United States Department of Justice, the FBI categorically denied the plaintiff's FOIA request and withheld responsive records concerning ArthroCare, Inc., DiscoCare, Inc. and Palm Beach Lakes Surgery Center pursuant to FOIA Exemption 7(A). Second Seidel Decl. at ¶ 61 (DE# 41-1, 12/7/20); see 5.U.S.C. § 552(b)(7)(A). Ms. Cunningham repeatedly advised the FBI that it would be harmful for the FBI to release its investigative records until Mr. Baker exhausted his ability to challenge his conviction on direct appeal or a collateral habeas challenge under Section 2255, Title 28 of the United States Code, because disclosure could jeopardize the case. Additionally, the case agent responsible for the subject investigative files adamantly opposed the release of the records because information and evidence contained within the FBI's investigatory files could be used in the government's future prosecution of Mr. Baker.

a. Three Categories under Exemption 7(A)

The FBI identified 30 types of records[21] in the subject investigative files that it claims fall within one or more of three functional categories. See Second Seidel Decl. at ¶¶ 64(a)-(z), (aa)-(dd) (DE# 41-1, 12/7/21).  The FBI's three functional categories are: 1) evidentiary/investigative materials, 2) administrative materials; and 3) public source materials. Id. at ¶ 69. The defendants withheld all responsive documents in the first two categories, but fully or partially produced approximately 500 pages of documents in the public source materials category.  In paragraph 67, Mr. Seidel states:

_____

[21]Some of the 30 types of records identified in the Second Seidel Declaration are specific, for example, Interview Forms (FD-302) and Notes, fingerprint cards, FBI Investigative Reports, and Federal Grand Jury Subpoenas/Subpoenaed Information. Many, however, are vague, for example, Memorandum, Emails, Non-Public Court Documents, Miscellaneous Administrative Documents, Intra-agency Memorandum, and FBI Computer Printouts. See Second Seidel Declar. ¶ 64.

> Any release of information from these files to [the plaintiff] would be premature and likely to cause harm. ... While many pieces of information have been made public through the criminal proceedings, the protected FBI records are not identical to that information and any such information is intertwined with non-public information.  Release of these records would reveal non-public details about the scope of the pending FBI investigative efforts, allow targeted individuals to critically analyze documents concerning these investigations and the reasonably anticipated further proceedings. Such individuals would then possess unique advantage of knowing the non-public details surrounding potential criminal activities, the identities of potential witnesses, and the direct and circumstantial evidence of the potential criminal activities.  These individuals could therefore use the released information to their advantage to destroy evidence, intimidate potential witnesses, and/or evade the FBI's investigative efforts in relation to reasonably anticipated further proceedings....

Id. at ¶ 67.  Mr. Seidel asserts that "the release of this information could allow other-third parties to interfere with the pending proceedings by providing them the means to harass/intimidate witnesses, investigators and/or prosecutors, and/or allow them the opportunity to create false evidence or corrupt valuable evidence, calling into question the validity of facts gathered during FBI investigations...." Id. at ¶ 68.

The plaintiff argues that the Second Seidel Declaration does not identify what documents are withheld or the number of documents withheld pursuant to each exemption and/or category.  Without more information, the plaintiff argues that the Court, which must narrowly construe exemptions, cannot determine whether the exemptions apply. The undersigned agrees. The undersigned finds that such generic harms do not satisfy the FBI's burden of providing a factual basis to withhold thousands of pages of documents where, as here, the FBI concedes that "many pieces of information have been made public through the criminal proceedings...."  Id. at ¶ 67.

### i. Evidentiary/Investigatory Materials

The evidentiary/investigative materials category includes copies of records or

evidence, and derivative communications discussing or incorporating evidence. Id. at ¶ 69(A). Mr. Seidel attests that a derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation. Id. "Other derivative communications report this information to other FBI Field Offices or other law enforcement agencies, either to advise them of the progress of the investigation, or to elicit their assistance in handling investigative leads." Id. Two sub-groups exist under this category:  i) information concerning physical and documentary evidence; and ii) exchange of information between various federal agencies. Id.

The Second Seidel Declaration explains that information concerning physical and documentary evidence may include records obtained through and/or summarizing information gathered through searches, seizures, surveillance, confidential source/witness interviews, Federal Grand Jury subpoenas, and any other law enforcement/intelligence gathering activities. The FBI maintains that further description of the records could reasonably lead to disclosure of the nature of the pending investigative efforts/programs to which the records pertain. Id.

According to the FBI, disclosure of the physical and documentary evidence

could be detrimental to success of the pending and prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected or likely to be considered for further prospective action; allowing investigative subjects to discern the FBI's investigative strategies and employ countermeasures to avoid detection and disruption by law enforcement; and/or allow investigative targets to formulate strategies to contradict evidence to be presented in Court proceedings.

Second Seidel Decl. at ¶ 69(A)(I). While these potential harms may result before a trial, it is difficult for the undersigned to find that they apply to evidence that was previously made

public during the prior trials in the present case. The undersigned finds that the FBI's invocation of Exemption 7(A) to categorically deny the release of physical and documentary evidence in the investigative files is not justified at this time because the FBI's explanation in Mr. Seidel's Second Declaration does not allow the Court to know how the physical and documentary evidence could result in interference of a possible prospective enforcement proceeding if many of the materials were disclosed during the prior trials, witnesses testified, and information exists in the public domain. The Court should deny without prejudice to renew the defendants' motion for summary judgment on the FBI's denial of the release of physical and documentary evidence.  The Court should grant the plaintiff's motion for summary judgment in part **and** require the defendants to explain why and identify which documentary evidence that was previously made public should be withheld now.

According to the Second Seidel Declaration, releasing records in the second sub-group, exchange of information between various federal agencies, will disclose investigative information developed by various agencies that cooperated with and provided information and records to the FBI in a pending investigation with the mutual understanding that the information would not be prematurely disclosed. Mr. Seidel attests that coordinated effort assists the FBI in identifying subjects, suspects or other individuals of potential investigative interest as well as locating witnesses and/or confidential sources. The FBI further explains that the release of such information would identify the investigative interest in particular individuals and subject witnesses and confidential sources to potential harassment, intimidation and physical or mental harm.  Id. at ¶ 69(A)(ii).  The undersigned finds that the FBI's Second Seidel Declaration does not identify and does not provide an

adequate explanation of why the documents should be withheld due to potential harms to individuals who were previously disclosed and/or testified at prior trials. The defendants should be required to provide a more detailed index or affidavit that identifies the withheld documents and provide explanations that take into consideration whether the information was previously made public at the prior trials of Messrs. Baker and Gluk.

ii. <u>Administrative Materials</u>

The "administrative materials" category has the following two sub-groups: 1) reporting communications; and 2) administrative instructions. Seidel Second Decl. at ¶ 69. According to the FBI's second declaration, administrative materials "include items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines." Seidel Second Decl. at ¶ 69(B). The FBI explains that "[i]n many instances, administrative information is contained in correspondence or documents that fall into other categories," ... the release of which "would also reveal the investigative interests of the FBI and could enable suspects to discern non-public information akin to a 'road map' of the investigation." <u>Id</u>.

According to the Second Seidel Declaration, reporting communications enable the FBI and other agencies to monitor the progress of the investigation and to facilitate its conduct. Reporting communications may reveal the coordination of other local, state or federal agencies in the investigation. Additionally, reporting communications contain detailed, non-public information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed. Seidel Second Decl. at ¶ 69(B)(I). Mr. Seidel avers that reporting communications also contain

background information about third-parties, the origin of relevant information that associates them to the investigation, their connection with subjects, and their relationship with a pending investigation.  The FBI explains that disclosure of reporting communications records could reveal perceived weaknesses in the investigation as well as non-public information about the process of obtaining witness and confidential source interviews as well as techniques and methods used to compile and/or solicit information from various witnesses.  Id.  The undersigned finds that the defendants' categorical denial of disclosure of reporting communications lacks the factual basis and explanation regarding whether any of the information in this category was previously disclosed at trial and if so, why disclosure at this time would be harmful.  The defendants should be required to provide a more detailed index or affidavit and better explanations so this Court has the factual basis to determine whether Exemption 7(A) applies.

According to Mr. Seidel, administrative instructions are also known as "investigative leads" and are set forth through the course of FBI investigations.  "Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices and other government agencies."  Seidel Second Decl. at ¶ 69(B)(II). The defendants maintain that disclosure of the type of information contained in administrative instructions to a knowledgeable person would disclose specific investigative procedures and strategies used in the investigation.  Disclosure would potentially enable subjects of the investigation to alter or negate incriminating evidence which could be used in future proceedings and/or investigative efforts.  Id. While disclosure of such information may disclose law enforcement techniques, the undersigned has no way of knowing which withheld documents contain such

information.  Additionally, if such information has previously been disclosed during the prior

trials, disclosure of such records at this time may not pose any risk of harm. The Court

should deny the defendants' motion for summary judgment without prejudice to renew and

grant the plaintiff's motion for summary judgment in part to require the defendants to

provide more information in a detailed index or affidavit so that the Court has the factual

basis to determine whether the exemption applies.

### iii.  Public Source Material

The FBI segregated and released one category of information from the responsive

investigative files – public source material, which accounts for the production of

approximately 500 pages of documents. Id. at ¶ 69(C).  Mr. Seidel averred "[i]n this case,

certain newspaper articles, press releases, and court documents were determined

segregable in part or full because such information would not interfere with any pending or

prospective enforcement proceedings."  Id.

### b.  Inadequacy of the Second Seidel Declaration

The Second Seidel Declaration states that "[w]hile many pieces of information have

been made public through the criminal proceedings, the protected FBI records are not

identical to that information and any such information is intertwined with non-public

information." Second Seidel Decl. at ¶ 67 (DE# 41-1, 12/7/20).  The FBI only released to

the plaintiff records that, on their face, were identical to the public records. Id. at ¶ 67, n.

17. The FBI's admission is significant: "many pieces of information have been made public

through the criminal proceedings," yet the defendants invoke the protection of Exemption

7(A) without explaining why the information that was previously disclosed to the public in

the underlying criminal proceedings would potentially interfere in a future law enforcement

proceeding against Mr. Baker if he succeeds in his pending habeas proceeding and receives a new trial.

The FBI asserts that release of the information contained in the withheld documents would cause the following potential harms: 1) the identification of individuals, sources, and potential witnesses who possess information related to the investigation and possible harm to, or intimidation of such individuals; 2) the use of released information to inappropriately counteract evidence developed by investigators, to alter or destroy potential evidence, or to create false evidence; 3) the use of information released to discover the government's strategy for prosecution; and 4) the use of released information by any subject of the investigations to assess the likelihood that he or she may be prosecuted and/or convicted based on the investigation. Id. at ¶ 67A-D. Additionally, third parties could use the release of this information to interfere with the pending proceedings by providing them the ability to harass/intimidate witnesses, investigators and/or prosecutors an/or provide them the opportunity to create false evidence or corrupt valuable evidence. Id. at ¶ 68.

Although not binding on this Court, the undersigned finds the Johnson court's analysis and determinations are persuasive and instructive. Like Johnson, in the present case, prior trials already occurred and a habeas petition is pending. In Johnson, the district court explained:

> In contrast to the categorical assertions of Exemption 7(A) in *Robbins Tire*, where the plaintiff sought advance access to witness statements that were not matters of public record, at least some of the materials in this case are being withheld to protect the identities of witnesses *whose identities may already be matters of public record* ... Such information likely having been disclosed and made part of the public records, it is impossible to see how its disclosure by way of a FOIA request would have any different effect than did its earlier disclosure during litigation.
> If [the FOIA requestor] were making this FOIA request before [the

> criminal defendant's] original trial, it may be that the risks of releasing any documents likely include interference with a prospective enforcement proceeding. However, without a detailed description of the materials that are in the investigative file, especially a detailed description of which materials were made part of the public record at trial ..., the Court is in no position to find that any of the material in the investigative file risks interfering with [the criminal defendant's] possible second trial. Consequently, the Court cannot grant the FBI's motion for summary judgment under Exemption 7(A) at this time and on this record.

Johnson, 118 F. Supp. 3d at 796 (emphasis in original).  Similarly, in the present case, as the FBI concedes, it is likely that many of the 20,500 pages of documents being withheld under Exemption 7(A) were previously disclosed in Mr. Baker's two prior criminal trials as well as the trial of Mr. Gluk.  Plaintiff's Reply at 7 (DE# 47, 12/31/20). The plaintiff argues further that this Court similarly cannot determine whether the defendants have justified withholding documents.  The government has not identified the withheld documents and has not provided the specific basis for withholding particular documents, including whether the withheld documents or information were previously disclosed in the previous criminal trials or pretrial hearings. Id.

In Johnson, the court "[found] that the FBI had not adequately asserted Exemption 7(A) categorically" because the FBI's declarations "[did] not provide a sufficiently detailed explanation from which the Court [could] find that the FBI has met its burden under the FOIA." Johnson, 118 F. Supp. 3d at 794.  In Johnson, the FBI provided 27 categories of responsive documents and described three types of potential harms if disclosed.  Id.  In the present case, the defendants identify 30 types of records that purportedly fall into one or more of three categories.

In their reply, the defendants argue that the plaintiff's "complaint that the agency did not disclose which documents were assigned to which categories, ... misses the entire point

38

of categorical withholding under Exemption 7(A)." Defendants' Reply at 5 (DE# 50, 1/14/21). The defendants argue further that "[a] requirement that an agency identify each of the records it has assigned to a functional category would render meaningless the agency's ability to assert the FOIA Exemption to an entire category of documents, rather than to individually identified documents." Id. The defendants rely on paragraph 69 of the Second Seidel Declaration that states:

> [t]he FBI has reviewed and grouped the responsive records into functional categories for purposes of demonstrating why the information is exempt from disclosure under FOIA Exemption 7(A). Each responsive document that was withheld falls into <u>one or more</u> of the functional categories described in the following paragraphs.

Id. (quoting Second Seidel Decl. at ¶ 69) (emphasis added).  The undersigned finds the phrase "one or more" is vague and conclusory.  The Court and the plaintiff have no idea which of the 30 types of records fall within a particular category, two categories or all three categories.

In the present case, as in <u>Johnson</u>, "each of the articulated types of harm is contingent upon the assumption that the information is not already public." <u>Johnson</u>, 118 F. Supp. 3d at 795. The <u>Johnson</u> court explained that "if such information has, *in fact*, been used at trial, then its disclosure at this stage of the litigation can hardly be said to interfere with prospective enforcement proceedings on the grounds articulated by the FBI." Id. (emphasis in original). Like <u>Johnson</u>, "[t]he only grounds on which the FBI could withhold such documents would be if they have never been released, and their release could reasonably be expected to interfere with prospective enforcement proceedings." Id.

The defendants' justifications for categorically withholding thousands of pages of records under Exemption 7(A) because the records are not identical to the "many pieces

of information [that] have been made public through the criminal proceedings" and that "any such information is intertwined with non-public information " are vague, dismissive and conclusory. See Second Seidel Decl. at ¶ 67 (DE# 41-1, 12/7/20).   In the present case, as in Johnson, "without a detailed description of the materials that are in the investigative file, especially a detailed description of which materials were made part of the public record at trial ..., the Court is in no position to find that any of the materials in the investigative file risk interfering with [Mr. Baker's possible new trial]." Johnson, 118 F. Supp. 3d at 796.  The categories in the Second Seidel Declaration do not provide the undersigned with the factual basis needed to find that Exemption 7(A) applies to any or all of the withheld records.

The undersigned finds that the defendants have not satisfied FOIA's requirements for a categorical denial under Exemption 7(A) because they have not assigned the documents to each of its three categories; and they have not explained how the articulated harms would result from disclosure at this time, that is, after two trials of Mr. Baker and one trial of Mr. Gluk.  Accordingly, the undersigned recommends that the plaintiff's motion for summary judgment be granted in part and the defendants' cross-motion for summary judgment be denied without prejudice to renew and the defendants be required to provide a more detailed affidavit or index assigning withheld documents to the specific categories. Additionally, the defendant should provide more detailed explanations of why the disclosure of the categories of withheld documents at this time will interfere with law enforcement proceedings particularly, where, as here, multiple trials have already occurred.

### 2.    Defendants' Other  FOIA Exemptions

In addition to the privacy exemptions previously invoked under Exemptions 6 and 7(C) regarding the defendants' *Glomar* response, discussed below, the defendants invoke

four new exemptions: 1) information protected by statute; 2) privileged information; 3) confidential source information; and 6) investigative techniques and procedures.  See 5 U.S.C. §§(b)(3), (b)(5), (b)(7)(D), and (b)(7)(E), respectively. The defendants rely[22] on paragraphs 71 through 134 of the Second Seidel Declaration to justify these underlying exemptions. Second Seidel Decl. at ¶¶ 70, 71-134.  To invoke an exemption, an agency "must submit affidavits that provide 'the kind of detailed scrupulous description [of the withheld documents] that enables a District Court judge to perform a searching de novo review.'" Brown v. FBI, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (quoting Church of Scientology of California, Inc. v. Turner, 662 F.2d 784, 786 (D.C. Cir. 1980)).

In his reply, the plaintiff argues that "the FBI has not identified the withheld information under the other FOIA exemptions with sufficient detail for the plaintiff or the Court to know which particular documents were withheld based on each particular exemption" and "which documents or information were previously made part of the public record at Mr. Baker's or other trials and hearings and which were not, and if not, why not." Reply at 8 (DE# 47, 12/31/20).

The undersigned finds that the Second Seidel Declaration does not identify the withheld records with adequate detail for the undersigned to determine which documents

---

[22]The defendants are "will[ing] to provide additional explanation *in camera ex parte* upon the Court's request." Cross-Motion at 13 (DE# 41, 12/7/2). The use of *in camera* review is frowned upon, where, as here, the FBI is withholding thousands of pages of documents and claims many FOIA exemptions. See Ely, 781 F.2d at 1493 (quoting Currie v. IRS, 704 F.2d 523, 531 (11th Cir. 1983)); see also Miscavige, 2 F.3d 368 (explaining *in dicta* "that when there are so few documents involved, an *in camera* inspection might be the preferred procedure"). By contrast, the Eleventh Circuit has noted that "*Vaughn* Indexes are the most useful in cases involving thousands of pages of documents.  Miscavige, 2 F.3d 368.

fall within a particular exemption, and does not provide an adequate explanation for why the exemption applies to particular documents.  Without such additional information, the undersigned cannot determine whether the four additional FOIA Exemptions apply.  See Johnson, 118 F. Supp. 3d at 797.  The undersigned recommends denying without prejudice to renew the defendants' cross-motion for summary judgment regarding the other exemptions after the defendants file a declaration or Vaughn index that identifies with increased specificity the  records found in the investigative file, the grounds for withholding the records and which documents were made part of the criminal defendants' prior trials.  Alternatively, the defendant may produce the responsive documents. The undersigned will briefly explain why the FBI's explanations regarding the other FOIA exemptions are inadequate.

a.　　<u>FOIA Exemption 3: Information Protected by Statute</u>

FOIA Exemption 3 protects from disclosure information which is:

> specifically exempted from disclosure by statute ... if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (b) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  The FBI invoked Exemption 3 and relies on the National Security Act of 1947 ("NSA"), Federal Grand Jury Information under Rule 6(e) of the Federal Rules of Criminal Procedure, and the Bank Secrecy Act ("BSA") to protect disclosure of intelligence sources and methods from unauthorized disclosure, information and records that were part of federal grand jury proceedings, and bank security act records, respectively.

While the NSA, Rule 6(e) and the BSA may provide grounds to exempt certain documents from disclosure, the FBI does not provide any detail as to which documents

were withheld on these grounds. The Second Seidel Declaration does not provide adequate information for the undersigned to determine whether any or all of the records are properly withheld under Exemption 3. See Aguirre v. SEC, 551 F. Supp. 2d 33 (D.D.C. 2008) (requiring the agency to file a supplemental *Vaughn* index identifying each withheld document and explaining which exemption applies and why).

b.    FOIA Exemption 5: Privileged Information

Exemption 5 exempts from disclosure an "inter-agency or intra-agency memorand[a] or letter which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552 (b)(5). The FBI invoked FOIA Exemption 5 to protect from disclosure documents that are privileged in the civil discovery context under the attorney work product doctrine, attorney client privilege and deliberative process privilege. Second Seidel Decl. ¶¶ 80-86. "Although privileged portions of documents may be withheld, '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.'" Miccosukee Tribe, 516 F.3d at 1257 (quoting 5 U.S.C. § 552 (b) (footnote omitted). "'[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'" Id. at 1265, n. 22 (quoting Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)).

The work product privilege requires the agency to show that the withheld information was created by or for an attorney in reasonable anticipation of litigation. Miccosukee Tribe, 516 F.3d at 1263 (citation omitted). Attorney client privilege requires the agency to show that withheld information contains confidential information shared by a client with an attorney to obtain legal advice or assistance, or the attorney's legal advice or assistance

43

to a client containing confidential information. Id. at 1262-1263 (citing Mead Data Central, 566 F.2d at 252).

"The purpose of the deliberative process privilege is to protect the quality of the agency's decision-making process." Id. at 1263. For the deliberative process privilege to apply, "the material must be pre-decisional" and "must be deliberative, 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Id. (quoting Renegotiation Bd. v. Grumman Aircraft Engineering Corp., 421 U.S. 168, 184 (1975); Vaughn, 523 F.2d at 1144). Mr. Seidel states that release of such information would impair the government's development of policy and undermine its decision-making process. Second Seidel Decl. at ¶ 82. According to the FBI, the responsive records include materials that contain pre-decisional, internal agency deliberations. In compliance with the FOIA Improvement Act of 2016, the FBI asserts that the subject deliberative-process material was created less than 25 years before the plaintiff's FOIA request. Id.

The FBI avers that responsive records include confidential communications between and among FBI and DOJ counsel and FBI employees (their clients) that reveal seeking and/or providing legal advice. Second Seidel Decl. at ¶ 84. The FBI maintains that the communications were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship and were made for the purpose of securing legal advice regarding the government's legal positions. Id. The defendants contend that disclosure would benefit individuals seeking legal action against the government and those targeted for prosecution by the government.

The FBI invokes Exemption 5 to protect interagency materials created by attorneys

and/or at the directions of attorneys in reasonable anticipation of litigation.  Such records were exchanged within the FBI, between the FBI and other DOJ entities, and/or between the FBI and other Executive Branch agencies. Second Seidel Decl. at ¶ 86. The FBI maintains that disclosure of such work product would adversely impact the government attorneys' ability to properly prepare their legal theories and strategies and undermine their ability to effectively represent their client, the government. Id. The FBI asserts that segregation is not required because the work product privilege protects both factual and deliberative material. Id.

The plaintiff relies on St. Andrews Park, Inc. v. U.S. Dep't of the Army Corps of Engineers, 299 F. Supp. 2d 1264 (S.D. Fla. 2003), which involved cross-motions for summary judgment on Exemption 5 (attorney client and work product privileges).  In St. Andrews Park, the court granted summary judgment on Court 1 in the plaintiff's favor because the defendant failed to provide a detailed and specific justification for withholding documents, and failed to adequately explain how Exemption 5 applied to the withheld documents or correlate the exemption to the withheld documents. St. Andrews Park, 299 F. Supp. 2d at 1268.  The court denied the government's cross-motion for summary judgment because it failed to provide a *Vaughn* index or affidavit with sufficient detail and questions of material fact existed regarding its claims of attorney-client and work product privileges. Id. at 1272.

The Second Seidel Declaration provides vague, general and conclusory statements that do not provide the undersigned with a sense of which documents or category of documents were withheld under Exemption 5, and whether or not the material in those documents actually falls within the scope of Exemption 5. See Miccosukee Tribe, 516 F.3d

45

at 1260 ("From the *Vaughn* Index and supporting affidavits, it is fair to say that both the Tribe and the district court were able to understand why each document or portion of document was withheld as exempt from disclosure...."). In the present case, the defendants have not met their burden to withhold documents under Exemption 5 and should be required to produce a more detailed affidavit or index to identify which documents fall within the exemption and adequate identifying information for the undersigned to determine whether the documents are protected as privileged.

      c.     <u>FOIA Exemptions 6 and 7(C): Clearly Unwarranted Invasion of Privacy and Unwarranted Invasion of Privacy</u>

"FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." <u>U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press</u>, 489 U.S. 749, 774 (1989) (emphasis in original). Exemption 6 exempts from disclosure matters contained in "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6).  The Supreme Court defines "similar files" broadly so that all information that "applies to a particular individual" may fall within Exemption 6. <u>U.S. Dep't of State v. Washington Post Co.</u>, 456 U.S. 595, 599-603 (1982). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552 (b)(7)(C).

Where, as here, the FOIA request has nothing to do with any alleged improper

activities of the FBI or DOJ, the names and addresses of private individuals contained in records within the scope of Exemption 7(C) generally enjoy categorical protection. See SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir.) ("hold[ing] categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"); see also Broward Bulldog, 939 F.3d at 1185 (explaining that the Eleventh Circuit has "not adopted the public-domain doctrine regarding Exemption 7(C)").

While the undersigned finds that the significant privacy interests of the individuals outweigh the lack of public interest in disclosure in this case, the undersigned cannot determine which of the thousands of pages of records have been withheld under Exemptions 6 and 7(C). Paragraphs 87 through 100 of the Second Seidel Declaration disclose the types of individuals whose names and personal information the defendants seek to protect under Exemptions 6 and 7(C). Second Seidel Decl. ¶¶ 87-100 (DE# 41-1, 12/7/20). However, the defendants fail to identify which of the thousands of pages or portions of documents are being withheld under Exemptions 6 and 7(C). The defendants should be required to identify which specific documents or portions thereof are being withheld under these privacy exemptions so that the Court may determine whether the documents are properly withheld under Exemptions 6 and 7(C).

### d. FOIA Exemption 7(D): Confidential Source Information

The FBI invoked FOIA Exemption 7(D) as an underlying exemption to protect confidential source information. Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993) (emphasis in original). In Landano, the Supreme Court found that "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the [FBI] thought necessary for law enforcement purposes." Id. at 174.

The FBI asserts Exemption 7(D) to withhold the names and identifying information and information provided by individuals and/or corporations under express assurances of confidentiality. In Landano, the Supreme Court found that "[n]either the language of Exemption 7(D) nor Reporters Committee, ... supports the proposition that the category of *all* FBI criminal investigative sources is exempt." Id. at 177-178 (emphasis in original). The Supreme Court held that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." Id. at 181. "[W]hen circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption." Id. The defendants have not identified which documents or portions of documents are being

withheld under Exemption 7(D) and have not described the witnesses' relation to the crime. Accordingly, the undersigned lacks sufficient information to determine whether Exemption 7(D) applies.  The defendants should be required to identify the documents or portions of documents claimed exempt under Exemption 7(D) as well as the witnesses' relation to the crime so that the Court is able to determine which, if any, of the thousands of pages of documents are properly withheld under Exemption 7(D) (confidential sources).

     e.    FOIA Exemption 7(E): Investigative Techniques and Procedures

The FBI invoked underlying Exemption 7(E) to protect information from these records, release of  which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. See 5 U.S.C. § 552(b)(7)(E); see also Broward Bulldog, 939 F.3d at 1192 ("Exemption 7(E) protects information that would reveal facts about techniques or their usefulness that are not generally known to the public, as well as other information when disclosure could reduce effectiveness of such techniques.") (citation omitted).  The FBI applied Exemption 7(E) to non-public investigative techniques and procedures that the FBI uses to pursue its law enforcement, and to non-public details about such techniques and procedures that are otherwise unknown to the public. The undersigned cannot evaluate the application of Exemption 7(E) without knowing which documents or categories are claimed to be exempt. The defendants should be required to identify the documents or portions of documents claimed exempt under Exemption 7(E) so that the Court has the factual basis to determine which, if any, of the thousands of pages of documents are properly withheld.

       3.    <u>Defendants' *Glomar* Response Regarding Certain Individuals</u>

In addition to other records, the plaintiff's FOIA request sought any case files or other records concerning six third party individuals, namely: Dr. Jonathan Cutler, Michael Denker, Michael Stephen Steinger, Mark Izydore, Matthew Iscoe and Jackie Marsh. The FBI issued a *Glomar* response to this part of the plaintiff's FOIA request in its letter dated June 27, 2018.  <u>See</u> Second Seidel Decl. at ¶ 8.  The defendants seek summary judgment in their favor on their *Glomar*  response. The plaintiff does not specifically address the merits of the defendants' *Glomar* response and does not offer any public interest for the undersigned to weigh against the individuals' interests in maintaining their privacy.

"While typically an agency identifies, however generally, the documents for which it asserts an exemption, courts recognize an exception to this rule, known as the *Glomar* response, by which an agency 'neither confirms nor denies the existence of the documents sought in the FOIA request.'" <u>Miccosukee Tribe</u>, 103 F. Supp. 3d at 1324 (S.D. Fla. 2015) (quoting <u>Office of the Capital Collateral Counsel, North. Region of Florida, *ex rel.* Mordenti v. Dep't of Justice</u>, 331 F.3d 799, 801 n.3 (11th Cir. 2003) (citing <u>Phillippi</u>, 456 F.2d at 1009). "A *Glomar* response ... is 'permitted only when confirming or denying the existence of records would itself "cause harm cognizable under [a] FOIA exemption."'" <u>CREW</u>, 746 F.3d at 1091 (quoting <u>Roth v. U.S. Dep't of Justice</u>, 642 F.3d 1161, 1178 (D.C. Cir. 2011)(quoting <u>Wolf v. CIA</u>, 473 F.3d. 370, 374 (D.C. Cir. 2007) (other quotation and citations omitted)).

The Second Seidel Declaration explains that the FBI's *Glomar* response to requests seeking the records of third party individuals is based on FOIA's personal privacy exemptions, Exemptions 6 and 7(C). 5 U.S.C. §§ 552(b)(6) and (b)(7)(C); Second Seidel

Decl. at ¶ 8; see Exemptions 6 and 7(C) discussed above.  To the extent that any records exist regarding the six individual third parties, the Second Seidel Declaration avers that all of the records "would be compiled for law enforcement purposes." Second Seidel Decl. at ¶¶ 48-49.

Both privacy exemptions require the court to weigh the individual privacy interests against the public interest, if any, in disclosure of the information requested in order to determine whether a particular disclosure "would constitute a clearly unwarranted invasion of personal privacy" under Exemption 6 or whether the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C). See, e.g., Reporters Committee, 489 U.S. at 762; L&C Marine Transport, Ltd. v. United States, 740 F.2d 919, 922-23 (11th Cir. 1984).

The Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" Reporters Committee, 489 U.S. at 780.

The Second Seidel Declaration explains that

[t]he FBI's long standing policy has been to neither confirm nor deny the existence of records in those instances ... where a requester seeks access to information regarding a third-party but fails to provide a privacy waiver from the third-party or proof of death of that third-party .... Such a response is necessary because members of the public are likely to draw adverse inferences from the mere fact that an individual is mentioned in the files of a criminal law enforcement agency such as the FBI, and cast them in an unfavorable or negative light. These individuals maintain strong privacy interests in not having their personal information disclosed.... Release of [an] individual's association with a criminal investigation, as a suspect, victim, witness, or source, or even as a person merely mentioned, tends to

stigmatize the individual....

Second Seidel Decl. at ¶ 50.

In the present case, the plaintiff has not explained how disclosure of the records regarding these six third party individuals will serve any interest other than his own private, financial interests and those of his clients, who are pursuing civil claims for securities fraud. The plaintiff has not shown that disclosure would "contribute significantly to [the] public understanding of the operations or activities of the government."  Reporters Committee, 489 U.S. 772-75; Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 172 (2004). The undersigned finds that the privacy interests of the six third party individuals outweigh the lack of public interest in disclosure.  The undersigned recommends that the Court grant the defendants' cross-motion for summary judgment in part as to their *Glomar* response. While the *Glomar* response allows the defendants to neither admit nor deny whether any responsive records reference the six third party individuals who have significant privacy interests, the defendants cannot apply the *Glomar* response to justify withholding all of the approximately 20,500 pages of withheld responsive documents.  The defendants should be required to identify documents being withheld under the underlying privacy exemptions, Exemption 6 and 7(C).

IV.    Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). As to the thousands of pages of withheld records, the FBI maintains that "there is no other reasonably segregable portion of any document that can be released from the pending investigative files responsive to Plaintiff's request...." Second

Seidel Decl. at ¶ 69; see also Oglesby, 79 F.3d at 1176 (FOIA requires the agency to release "'any reasonably segregable portion' after deletion of the nondisclosable portions" even if some of the records requested contain exempt information) (quoting 5 U.S.C. § 552(b)).   The FBI contends that all contents of every single page of the approximately 20,500 withheld documents are protected by one or more exemptions without providing adequate information for the undersigned to make a *de novo* determination of the application of those exemptions. 5 U.S.C. § 552(a)(4)(B)(vii); Ely, 781 F2d.at 1490. The undersigned finds that the FBI has not met its burden in demonstrating that nothing is segregable from the remaining withheld documents. This Court should require the defendants to provide the requisite specificity of the grounds for the withheld documents or portions of documents so that the Court can determine whether the defendants have satisfied their obligations to produce the non-exempt segregable portions of the records.

V.     Plaintiff's Motion for Summary Judgment

As discussed above, the undersigned respectfully recommends that the Court grant the plaintiff's motion for summary judgment in part because the defendants have not satisfied their burden of providing this Court with the factual bases upon which to determine whether Exemption 7(A) and the six underlying exemptions apply to any, some or all of the withheld documents.  The Court should require the defendants to provide a more detailed affidavit or index that explains why the particular withheld documents are subject to each of the claimed exemptions, and explains how the claimed harms apply particularly where, as here, Mr. Baker's habeas proceeding is pending and two prior jury trials previously occurred.

VI.     Attorneys' Fees and Costs under FOIA

In his motion, the plaintiff requests that he be permitted to reserve his right to file a request for an award of attorneys' fees and costs under FOIA at an appropriate time in the event the Court grants relief upon a finding that the defendants wrongfully withheld documents under FOIA. Plaintiff's Motion at 13, 23-24 (DE# 34, 10/23/20).  In his reply, the plaintiff contends that he is entitled to an award of reasonable attorneys' fees because the plaintiff incurred fees and costs in this action due to the defendants' non-compliance and ultimately caused the defendants' compliance although inadequate.  Plaintiff's Reply at 2 (DE# 47, 12/31/20).

The defendants do not address the attorney's fee issue in their response/cross-motion for summary judgment. Response/Cross-motion (DE# 41, 12/7/21). In their reply, the defendants argue that the plaintiff is not entitled to attorney's fees because the plaintiff failed to comply with the timing and conferral requirements of Local Rule 7.3(a)-(b) of this Court and the plaintiff is neither eligible nor entitled to an award of attorney's fees under FOIA.  Defendants' Reply at 2 (DE# 50, 1/14/21).

Under FOIA, an award of reasonable attorneys' fees and costs is discretionary and may be assessed against the United States when the complainant has substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i)-(ii); Clarkson v. I.R.S., 678 F.2d 1368, 1371 (11th Cir. 1982) (citations omitted); Lovell v. Alderete, 630 F.2d 428, 431 (5th Cir. 1980) (citing Blue v. Bureau of Prisons, 570 F.2d 529, 533 (5th Cir. 1978)).

The FOIA fee provision "does not authorize courts to assess what it means to 'prevail' (substantially or otherwise) in a FOIA case in the abstract; rather the statute provides:

> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>> (I) a judicial order, or an enforceable written agreement or consent decree; or
>> (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."

Jewell, 160 F. Supp. 3d at 201 (quoting 5 U.S.C. § 552(a)(4)(E)). FOIA's fee provision "naturally divides the attorney-fee inquiry into two prongs ... fee 'eligibility' and fee 'entitlement.'" Id. (citing Brayton v. Office of the U.S. Trade Commission, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368-69 (D.C. Cir. 2006)). "'The eligibility prong asks whether the complainant 'substantially prevailed' and 'may' receive fees.'" Id.

If the court determines that the complainant proves eligibility, then "the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees.'" Id. (emphasis in original). The four factors that courts consider to determine entitlement are: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." Judicial Watch, Inc. v, Federal Bureau of Investigation, 522 F.3d 364, (D.C. Cir. 2008); Electronic Privacy Information Center v. United States Dep't of Homeland Security, 218 F. Supp. 3d 27, 38 (D.D.C. 2016).

Under FOIA, the party seeking an award of attorneys' fees bears the burden of establishing eligibility, entitlement and reasonableness. See Electronic Privacy Information Center, 218 F. Supp. 3d at 38. In the present case, the plaintiff has not attempted to meet the burden of establishing eligibility, entitlement and reasonableness to an award of

attorneys fees under FOIA.  The undersigned recommends that the Court grant the plaintiff's request to reserve his right to file a motion for fees and costs under FOIA if and when it is appropriate and establish eligibility, entitlement and reasonableness at that time.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that  the the Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (DE# 34, 10/23/2020) be **GRANTED in part** to require the defendants to comply with their burden under FOIA to identify and assign the withheld documents to the particular category under Exemption 7(A) and to identify which documents or portions of documents are being withheld under each of the distinct underlying exemptions**.**  Additionally, the plaintiff's motion should be **GRANTED in part** to allow the plaintiff to pursue a claim for attorneys' fees and costs, if and when it is appropriate.  The undersigned **further** respectfully **RECOMMENDS** that the Defendants' Response to Plaintiff's Motion for Summary Judgment, and Cross Motion for Summary Judgment (DE# 41, 12/7/20) be **GRANTED in part** as to the defendants' *Glomar* response that neither admits nor denies the existence of responsive records regarding the six third party individuals and **DENIED without prejudice** to renew as to the application of Exemption 7(A),  Exemptions 6 and 7(C) and the other exemptions. This Court should require the defendants to produce responsive documents or justify the application of Exemption 7(A) and any of the other exemptions to each withheld document by providing a more detailed declaration or *Vaughn* index that explains why the particular withheld documents are subject to each of the claimed exemptions and provide the factual basis for this Court to determine the applicability of the

claimed exemptions. The Court should allow the parties to renew their cross-motions for summary judgment after the defendants submit a more detailed declaration or index.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Aileen Cannon, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985).

RESPECTFULLY SUBMITTED at Miami, Florida, this 12th day of August, 2021.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE